**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**PATRICK C. LYNN,**

      **Plaintiff,**

      **v.**                      **CASE NO. 20-3046-KHV**

**ARAMARK, INC., et al.,**

      **Defendants.**

**O R D E R**

Plaintiff, Patrick C. Lynn, is a state prisoner housed at Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). Plaintiff brings this pro se civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff has filed a motion to proceed in forma pauperis (ECF No. 2).

Plaintiff is subject to the "three-strikes" provision under 28 U.S.C. § 1915(g). Court records fully establish that Plaintiff "has, on 3 or more prior occasions, while incarcerated . . . , brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted."[1] Accordingly, he may proceed in forma pauperis only if he establishes a threat of imminent danger of serious physical injury. *Id*. The Court has examined the complaint (ECF No. 1) and Plaintiff's motion to proceed in forma pauperis (ECF No. 2) and finds no showing of imminent danger of serious physical injury.

As documented by the Court in Plaintiff's previous cases, Plaintiff is a highly litigious Kansas inmate. *See Lynn v. Patty*, No. 16-3254-JTM, ECF No. 12 (Feb. 28, 2017); *Lynn v. Kansas*, No. 16-3089-JTM, ECF No. 18 (Aug. 5, 2016). In the instant case, Plaintiff takes issue with the

---

[1] *See, e.g., Lynn v. McClain,* 12 F. App'x 676, 679 (10th Cir. 2001) (noting that Lynn's "past civil filings have subjected him to the 'three strike' provisions"); *Lynn v. McClain,* 162 F.3d 1173 (10th Cir. 1998) (finding that Lynn "now has a total of six strikes against him").

diet he has been receiving at HCF.  Plaintiff states that he is on a medically ordered diet, "Renal II – Increased Protein/3 Hot Meals daily."  ECF No. 1, at 3.  He alleges that since his transfer to HCF, he has been "repeatedly" sent a Renal I Diet tray and a "cold sack lunch."  *Id.*  He further claims he is allergic to peanut products but has been served peanut butter an undisclosed number of times, and documentation of his peanut allergy has been "criminally deleted" from his medical record.  *Id.* at 4.  Plaintiff states that since he returned to HCF on January 23, 2020, "every meal" has been a battle with Aramark staff to receive the correct diet.  *Id.* at 5.

Plaintiff describes one incident, which occurred on December 30, 2019, where he received two ounces of protein instead of the four ounces provided for under the Renal II diet.  *Id.* at 4-5. He returned his tray and was given a corrected tray.  Plaintiff alleges the Aramark supervisor, Defendant Shaddick, was "visibly angry at [him] for exposing her corrupt incompetence."  *Id.* at 5.  When Defendant Ludwick refused to allow Plaintiff to return to his cell with his food, Plaintiff left the tray on a dining table and exited the dining room.  Plaintiff then claims Defendants Shaddick and Ludwick conspired for Shaddick to "concoct two perjurous" disciplinary reports against him, and he was "thereafter perjurously accused of assault and disruptive behavior" by Shaddick, and this "caused multiple cardiac events."  *Id.* at 5.

Plaintiff fails to show that he is in imminent danger of serious physical injury.  He does not make any allegations that he will suffer serious physical injury as a result of receiving a Renal I Diet instead of a Renal II Diet.  Even if he had, such claim would be speculative at best.  Further, practices that "may prove detrimental ... over time" do not represent imminent dangers as the harm is not "about to occur at any moment." *Tabansi v. Wolf*, No. 3:15-CV-676, 2015 WL 5695903, at *2 (M.D. Pa. Sept. 23, 2015) (quoting *Ball v. Famiglio,* 726 F.3d 448, 468 (3d Cir. 2013)).

Rather, Plaintiff focuses on the fact that receiving the wrong diet upsets him: "[T]hese inane battles w/these Aramark staff and the named HCF Security staff defendants has caused me to suffer extreme psychological distress which dramatically affects my physical health and causing me to suffer cardiac issues."  ECF No. 1, at 6.  This is not sufficient to satisfy the statutory exception.  *See Taylor v. Allen*, No. 07-0794-CG-M, 2009 WL 1758801, at *2–3 (S.D. Ala. June 16, 2009) (finding that fear, psychological stress, and mental anguish are not physical injuries as required by the statute).  In *Skillern v. Jackson*, the plaintiff argued that the defendants failed to provide him with correspondence material that he had requested on several occasions.  *Skillern v. Jackson*, No. CV610-014, 2010 WL 1737637, at *2 (S.D. Ga. March 29, 2010), *adopted,* 2010 WL 1737608 (S.D. Ga. April 29, 2010).  The plaintiff asserted that "doctors prognosticate" that he will have another heart attack due to the stress defendants' "illicit conduct causes."  *Id*.  The court found that plaintiff failed to show that he was in imminent danger of serious physical injury at the time he filed his complaint.  *Id*.

Courts have held "that there must be a nexus between the imminent danger a three-strikes prisoner alleges to obtain IFP status and the legal claims asserted in his complaint."  *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009).  "In deciding whether such a nexus exists, [courts] will consider (1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would redress that injury."  *Id.* at 298-99 (emphasis and footnote omitted); *see also Lomax v. Ortiz-Marquez*, 754 F. App'x 756, 759 (10th Cir. 2018) (unpublished) (adopting Second Circuit's position that inmate seeking imminent danger exception must show a nexus between imminent danger and legal claims asserted in complaint) (citing *Pettus*, 554 F.3d at 297).

Applying the nexus analysis, the court in *Richardson v. Gessner Primecare Medical, Inc.*, found that the plaintiff's allegation that he is experiencing headaches and pain from the tightening of his muscles when he thinks about the defendants' conduct fails to establish that he is in imminent danger of serious physical injury, because "[p]laintiff's claimed physical injuries are traceable more to his own thoughts than the defendants' actions." *Richardson v. Dr. Gessner Primecare Medical, Inc.*, No. 165461, 2016 WL 6609181, at *2 (E.D. Pa. Nov. 7, 2016). The court found that it had no ability to fashion relief to address those injuries because any relief the court could provide "would have no effect on plaintiff's ability to cause himself anxiety, depression, headaches, and other pain upon recalling the defendants' actions." *Id*. The court found that even if plaintiff had alleged a sufficient nexus between the physical manifestations he was experiencing and the defendants' conduct, "the harms he describes are insufficient to establish that he is in imminent danger of serious physical injury for purposes of § 1915(g)." *Id*. (citations omitted); *see also Lyles v. Dretke*, No. 6:08cv382, 2009 WL 722076, at *1–2 (E.D. Tex., March 16, 2009) (allegations of mental stress and high blood pressure to the extent that the prisoner had to make 87 requests for blood pressure medication in 24 days did not show imminent danger of serious physical injury); *Beasley v. Holman*, No. 6:10cv660, 2011 WL 2690128 (E.D. Tex., July 11, 2011) (rejecting allegation that strip searches placed a prisoner in imminent danger because he claimed the humiliation caused by the searches resulted in a great degree of stress and mental anguish, producing trembling, increased blood pressure, feelings of restlessness, and other emotional reactions raising the strong possibility of a heart attack or stroke); *Threatt v. Davenport*, No. 1:13-cv-421, 2013 WL 1831803, at *2 (W.D. Mich. Apr. 30, 2013) (plaintiff was not in imminent danger despite allegations that he was being kept "inside a single man cell 23–24 hours a day"

which was "stressing [him] out more keeping [his] blood pressure up sky high at risk for a heart attack or stroke, [and] stressing and depressing [him] to harm [himself]").

Plaintiff's allegations fail to contain specific, credible allegations of imminent danger of serious physical harm. "To meet the only exception to the prepayment requirement, a prisoner who has accrued three strikes must make 'specific, credible allegations of imminent danger of serious physical harm.'" *Davis v. GEO Group Corr.*, 696 F. App'x 851, 854 (10th Cir. May 23, 2017) (unpublished) (quoting *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1179 (10th Cir. 2011)). "Vague and utterly conclusory assertions are insufficient." *Id.*

Accordingly, pursuant to § 1915(g) Plaintiff may not proceed in forma pauperis in this civil action. Plaintiff is given time to pay the full $400.00 district court filing fee[2] to the Court. If he fails to pay the full fee within the prescribed time, the complaint will be dismissed based upon Plaintiff's failure to satisfy the statutory district court filing fee required by 28 U.S.C. § 1914.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **March 31, 2020,** to submit the $400.00 filing fee. The failure to submit the fee by that date will result in the dismissal of this matter without prejudice and without additional prior notice.

**IT IS SO ORDERED**.

**Dated on this 9th day of March, 2020, in Kansas City, Kansas.**

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
U. S. District Judge

---

[2] If a person is not granted in forma pauperis status under § 1915, the fee to file a non-habeas civil action includes the $350.00 fee required by 28 U.S.C. § 1914(a) and a $50.00 general administrative fee pursuant to § 1914(b) and the District Court Miscellaneous Fee Schedule prescribed by the Judicial Conference of the United States.